**RISNER v. COMMONWEALTH.**

Court of Appeals of Kentucky.

Sept. 28, 1951.

Wm. Melton, C. A. Noble, Hazard, for appellant.

A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MILLIKEN, Justice.

The appellant, Fritz Risner, was found guilty of the murder of Bill Campbell, which occurred in Perry County shortly before dawn on Sunday, May 7, 1950, and his punishment fixed at life imprisonment. The fact that appellant shot and killed Bill Campbell with a twenty-two rifle at the time and place stated in the indictment was admitted. Mrs. Hammonds was Risner's widowed sister, and he was staying with her in the building where she and Campbell, who also lived there, had intended to open a restaurant.

The grounds urged for reversal are: (1) That the verdict was motivated by passion and prejudice; (2) that the trial court erred in not giving an instruction on self-defense; and (3) that the court erred in not giving a peremptory instruction for the jury to return a verdict of not guilty.

The trouble started after the return home of the appellant, his sister, Mrs. Hammonds, and Bill Campbell from a social evening visiting several places where beer was sold and where they had drunk some. According to Risner, upon their return home Campbell abused Mrs. Hammonds verbally and struck her; that he (Risner) tried to pacify Campbell and was rewarded for his efforts by a blast of threatening profanity; that he (Risner) then started out in the automobile of two other companions of the evening, Jane McIntyre and James Gokey, to search for a deputy sheriff to take charge of Campbell and, after that search failed, they drove on in search of Mae Hammond's sons whom he then informed of the situation. The Hammonds boys headed to the site of the trouble, but Risner and his companions got there first. Risner ran into the home where he had left Campbell and Mae Hammonds, found no one, and then in his own words: "As I come back out they was a 22 rifle setting there. I picked that rifle up and comes back out with the rifle. Well, when I come back out with the rifle I had to come down the steps —steps on each side of this big wide porch. When I come out the steps why Bill and my sister—I seen they was about ten or fifteen steps from the corner of the house. The front of the house. So he had hold of my sister and Sis was crying and I heard him say 'God damn you. I'm going to kill you,' and seen Bill had started to do that, and when he said it he had her by this hand and had his fist drawed up like that,

(indicating), and when he says 'God damn you, I'm going to kill you,' that's when I fired the gun."

Risner gave Campbell no warning whatever.

■ Jane McIntyre and James Gokey were out of the state at the time of the trial, so did not testify. Suffice it to say that there was testimony, including that of Mae Hammonds, which supported Risner's story. On the other hand, there was testimony to the effect that Mae Hammonds bore no evidence shortly after the killing of having been beaten; that she did receive some bruises in an automobile accident which occurred while rushing Bill Campbell to the hospital after the shooting. The court submitted the case to the jury under proper instructions, including one which directed the jury to find Risner not guilty if they believed from the evidence that Risner shot and killed Campbell because he "believed and had reasonable grounds to believe that Mae Hammonds was then and there in danger of death or the infliction of some great bodily harm at the hands of Bill Campbell and that it was necessary, or believed by the said defendant in the exercise of a reasonable judgment to be necessary to shoot, wound or kill the said Bill Campbell in order to avert that danger, real, or to the defendant apparent, then you will find the defendant not guilty." It is our conclusion that an instruction covering self-defense was not justified because there was no evidence that Risner himself was in danger, real, or to himself reasonably apparent, and there was no evidence that Campbell was armed with any weapon, deadly or otherwise, at the time Risner shot him.

■ The main contention of the appellant is to the effect that the verdict is flagrantly against the evidence. Where the killing is admitted, the burden is on the defendant to justify it. In Wireman v. Commonwealth, 268 Ky. 339, 104 S.W.2d 1083, 1084, the court said: "In counsel's brief the main contention is to the effect that the verdict is flagrantly against the evidence. Brought down to final analysis, the import is that the jury should have believed appellant and the witness Wireman and disbe-

lieved the testimony of Bailey. But after the jury has, under what we conceive to be correct instructions, duly deliberated and rendered a verdict to the contrary, we cannot adopt appellant's view. As we have so often said, we cannot reverse a judgment merely because the evidence was admittedly conflicting. The testimony by the commonwealth was beyond any doubt sufficient to take the case to the jury. Appellant admits the firing of the shot which took Prater's life. It became incumbent upon him to produce such testimony as would satisfy the jury that his defense was well grounded. The jury alone is charged with determining the issue. Appellant's defense was fairly submitted. In such a state of case we cannot supplant the jury and now say that their verdict was contrary to or flagrantly against the evidence. Hatfield v. Com., 264 Ky. 721, 95 S.W.2d 562; Davis v. Com., 265 Ky. 488, 97 S.W.2d 43; Taylor v. Com., 266 Ky. 325, 98 S.W.2d 928."

■ As to the appellant's contention that there was no evidence of malice on his part toward Campbell, we believe the trial court's instruction properly submitted that issue to the jury when it informed them that the phrase "with malice aforethought * * * means predetermination to do the act of killing without legal excuse, and it is immaterial at what time before the killing such a determination is formed." See Stanley on Instructions, Section 907. While it is error for a court to instruct a jury that "malice is implied by law from any deliberate cruel act committed by one person against another, however suddenly done," because malice is a question of fact which peculiarly belongs to the province of the jury, nevertheless, an act deliberately committed is a fact from which a jury may infer malice, its force depending upon the attendant facts and circumstances of each case. Salisbury v. Commonwealth, 79 Ky. 425.

Section 101, page 115, of Gregory on Kentucky Criminal Law reads: "Killing in self-defense is, however, not justified unless there appear to defendant to be no other safe means of averting the impending danger, and whether or not there be such means, is a question for the jury to deter-

mine under an instruction declaring apparent necessity a legal excuse, but such other means do not require, that the accused should run away rather than defend himself. The danger or apparent danger to be averted, where human life is taken, must be either loss of life or danger of sustaining great bodily harm."

From a careful consideration of the record it is our conclusion that the case was properly submitted to the jury under adequate instructions and, that being our conclusion, it is not within our province to set aside the jury's findings.

The judgment is affirmed.